UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KENNY TAYLOR,                                    :

                 Petitioner,          :

           -against-              :

WILLIAM D. BROWN,                        :

               Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Civ. 5262 (SAS) (AJP)

**REPORT AND RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Shira A. Scheindlin, United States District Judge:**

        Pro se petitioner Kenny Taylor (also known as Reggie Brown) seeks a writ of habeas corpus from his February 13, 2007 conviction in Supreme Court, Bronx County, of second degree assault and sentence of seven years imprisonment.  (Dkt. No. 2: Pet. ¶¶ 1-5.)

        Taylor's habeas petition asserts that the evidence at trial was insufficient to establish second degree assault because the prosecutor did not prove that the victim suffered "physical injury." (Pet. ¶ 13.)  Taylor also argues in his Traverse that he is "actually innocent" of the crime. (Dkt. No. 14: Taylor 2/18/11 Traverse at 1.)

        For the reasons set forth below, Taylor's habeas petition should be <u>DENIED</u>.

<b><u>FACTS</u></b>

        On October 12, 2004, while detained at the Bronx County Criminal Courthouse, Taylor had a physical altercation with fellow prisoner Ronald Fesce in which he punched Fesce in the face.  (Dkt. No. 5: Chamoy Aff. Ex. 1: Taylor 1st Dep't Br. at 2-3; Chamoy Aff. Ex. 3: State 1st

Dep't Br. at 4-7; Dkt. No. 2: Pet. Att.: Supporting Facts at 1-4.)  On November 12, 2004, Taylor was indicted for second and third degree assault.  (State 1st Dep't Br. at 3.)

**The Trial**

In November 2006, Taylor proceed to trial before Justice Michael Gross and a jury in Supreme Court, Bronx County.  (See Dkt. Nos. 6 & 7: Trial Transcript ("Tr.") 461-62.)

**The Prosecution Case at Trial**

On October 12, 2004, inmates Taylor, Fesce, Leon Lang and others were transported by bus from the Vernon C. Bane Center ("VCBC"), a prison barge in Hunts Point in the Bronx, to the Bronx County Criminal Courthouse.  (Lang: Tr. 741-44.)  On the bus, Taylor and Lang were handcuffed together, and were about three feet from Fesce.  (Lang: Tr. 744-46, 788.)  Taylor gave legal advice to another inmate and Fesce said, "don't listen to him because he don't know what he's talking about.  Because that's why he's still inside there."  (Lang: Tr. 745-47.)  Taylor and Fesce argued and shouted at each other for approximately twelve minutes.  (Lang: Tr. 747.)  Taylor threatened Fesce that "[h]e'll jack him up," that is, beat him up, to which Fesce replied, "you think you could?"  (Lang: Tr. 747-48.)

Upon arriving at the courthouse, Taylor, Fesce and Lang were placed in the same holding area along with approximately twelve other inmates.  (Lang: Tr. 749, 790.)  After the corrections officer walked away, the inmates encouraged Taylor and Fesce to fight.  (Lang: Tr. 749-50, 790-91.)  Though they initially hesitated, Taylor said to Fesce, "what's up now?  We in the cell.  What you gonna do?"  (Lang: Tr. 750-51.)  Fesce replied "whatever you want to do," and Taylor swung at Fesce.  (Lang: Tr. 751-52.)  Fesce swung back, but Taylor punched Fesce in the jaw with

an uppercut, causing Fesce to fall back and hit the back of his head on the corner of a steel bench. (Lang: Tr. 752-53, 793, 797-98, 799.)  Fesce began snoring on the holding cell floor, and Taylor told Fesce to "get up, get up," and "smacked him to see if he could bring him back."  (Lang: Tr. 753-54, 792, 795-96, 799, 802.)  Other inmates threw water on Fesce and tried to get him to sit up, but Fesce kept falling back and hitting his head.  (Lang: Tr. 754, 802.)  Fesce's body was limp, his eyes were closed and the back of his head "started swelling like the size of a softball."  (Lang: Tr. 754-55, 793, 801.)  Fesce vomited in the toilet of the holding cell and spit up blood in his mouth.  (Lang: Tr. 803-04, 810.)  No correction officers were present until the inmates were moved to the courtroom, at which time Fesce "walked like he was drunk."  (Lang: Tr. 755, 791-93, 803.)  Lang helped Fesce walk up the steps because Fesce could not walk on his own.  (Lang: Tr. 755, 799-801, 804.)

### Return to VCBC

Upon returning to VCBC, Taylor "bragg[ed] to everybody about the fight he had in the bullpens," and said that "he kicked this guy's butt."  (Lang: Tr. 756.)  That night, Correction Officer Kathleen Brown saw Fesce lying in his bed and did not notice anything unusual about his appearance.  (Brown: Tr. 490, 503.)  There were no fights in the housing unit that night.  (Brown: Tr. 505, 511, 514; Santa Maria: Tr. 702-03.)

On October 13, 2004, Correction Officer Quintin Howard woke Fesce twice, observed that "he was kind of slow getting up," and noticed a red mark under his right eye. (Howard: Tr. 519-21, 524-25, 536, 541, 543.)  Fesce said that there was nothing wrong with his eye and denied being in a fight.  (Howard: Tr. 521, 525, 538.)  Officer Howard notified his supervisor, Captain Nadine Santa Maria, of Fesce's injuries.  (Howard: Tr. 522.)  On the same day, Officer

Brown observed that Fesce's right eyelid was black.  (Brown: Tr. 490-93, 496, 497, 506-07.)  When she asked Fesce about his eye, he "insisted he did not have a black eye and that nobody hit him." (Brown: Tr. 493-94.)  Officer Brown also called Captain Santa Maria, who saw that Fesce's eye was discolored and sent him to the clinic.  (Brown: Tr. 494; Santa Maria: Tr. 680.)  Fesce told the doctor that he rubbed his eyes because of allergies, and denied that anything happened.  (Santa Maria: Tr. 682-83.)  Fesce wrote and signed a statement stating "'Nothing is wrong with my eyes.  Nothing has happened.'"  (Santa Maria: Tr. 683, 690-91, 693; Dkt. No. 2: Pet. Ex. A: Fesce Inmate Voluntary Statement.)  Captain Santa Maria testified that inmates are not always truthful in their written statements, in part because "they don't like to snitch.  They don't like the retaliation." (Santa Maria: Tr. 682, 691-92, 701.)

On October 14, 2004, at approximately 5:30 AM, Correction Officer Kenneth Pruitt told Captain Santa Maria that one inmate did not go downstairs to the hallway area.  (Santa Maria: Tr. 684-85; Pruitt: Tr. 821.)  Captain Santa Maria and Officer Pruitt found Fesce upstairs, sitting at a table in the day room with a blanket over his head.  (Forbes: Tr. 548; Santa Maria: Tr. 685; Pruitt: Tr. 821-22.)  Fesce had garbled speech, was incoherent, unable to walk, "huddled and kind of like shaking."  (Santa Maria: Tr. 685-87.)  He was able to "hear some commands" but could not speak. (Pruitt: Tr. 822.)  He was "a little dazed, unsteady," and "couldn't stand up on his own and -- he opened his eyes, closed his eyes, put his head down, stuff like that."  (Forbes: Tr. 548-49, 554.) Both of his eyes were "remarkably dark, like black-and-blue" "from about the center of the eyes on both sides, going down to the cheekbone area, and connecting to the nose."  (Santa Maria: Tr. 686-

87, 689; Forbes: Tr. 549.)  Captain Santa Maria called for medical staff, and Fesce was taken to the clinic and then to Lincoln Hospital.  (Pruitt: Tr. 822; Santa Maria: Tr. 688.)

Fesce died on October 17, 2004 at 8:28 PM.  (Ely: Tr. 614.)

**Fesce's Autopsy**

On October 18, 2004, Dr. Susan Ely of the Office of Chief Medical Examiner of the City of New York, performed Fesce's autopsy.  (Ely: Tr. 605, 610, 630.)  Dr. Ely determined that Fesce's cause of death was "blunt force trauma of head with cerebral contrecoup contusion, hematomas and skull fractures."  (Ely: Tr. 614-15.)  Fesce had internal and external contusions on the back of his head, the base of his skull and in the scalp tissue, as well as contusions on the front of his brain.  (Ely: Tr. 615.)  Fesce also had a skull fracture, swollen brain and a "contrecoup contusion" from hitting the back of his head on a "hard resistant surface," causing his brain to "jar[] against the front side of the skull" and cause bruising and "raccoon eyes."  (Ely: Tr. 617-22, 625-26.) Dr. Ely identified a single impact site based on a large contusion on the back of Fesce's head above a skull fracture.  (Ely: Tr. 616-17.)   The injuries were consistent with Fesce being hit in the face, falling backward, and hitting a metal bench on a cement floor.  (Ely: Tr. 627-28, 650-51.)  While there was no way to establish the specific date on which Fesce sustained his head injuries (Ely: Tr. 631, 634-35, 664),  Dr. Ely opined that "all of the injury inside the head occurred at the same time" and "if those spectacle hemorrhages were seen at 5:45 in the morning on the 13th, then it [] also stands to reason that those fractures of the orbital plates that occurred at the time of the impact to the back of the head had occurred prior to . . . that morning" (Ely: Tr. 665-66).

**Taylor's Motion to Dismiss**

At the close of the prosecution case, Taylor's counsel moved to dismiss the charges against Taylor, asserting that the prosecution failed to prove a prima facie case. (Tr. 848.) Taylor's counsel cited In the Matter of Anthony M., 63 N.Y.2d 270, 481 N.Y.S.2d 675 (1984), for the proposition that "an obscure or a merely probable connection between an assault and death will . . . require acquittal of . . . homicide." (Tr. 848-49, 851.) Justice Gross replied that "this argument [is] futile and, in a way, silly," because Taylor was not charged with homicide. (Tr. 851-52.) Taylor's counsel also argued that the prosecution's evidence was not credible because "Lang is a person who has 19 convictions." (Tr. 850.)[1] Before Justice Gross ruled on the motion, defense counsel clarified his argument:

> The thrust of my argument, Judge, is two fold: The witness was incredible; that the People haven't established a causal connection between the physical injury that they allege the complaining witness suffered and was hospitalized with; and the alleged assault of my client. And for that reason, I'm asking that the Court grant my order of dismissal at the end of the People's case.

(Tr. 852.) Justice Gross denied the motion to dismiss, holding that:

> THE COURT: Viewing the evidence in the light most favorable to the People, is there not evidence in this case that while in a detention facility, [Taylor] struck the victim, Ronald Fesce, and, as a result of that, Mr. Fesce became close to unconscious in the holding cell, falling, striking his head, having immediate swelling, having all of the other injuries that you heard testified to, not by the doctor concerning the autopsy two days later, but observed by the witness who testified yesterday, Leon Lang. Do you not have evidence in the record, again viewed in light most favorable

---

[1]    Lang's criminal history dates back to 1979. (Lang: Tr. 757, 771.) Among other things, Lang has: (1) provided false identifying information including names, dates of birth and Social Security numbers to mislead police officers (Lang: Tr. 757-58, 771-73, 785); (2) had parole revocations and open warrants dating back to 1990 (Lang: Tr. 758-66, 784-85); and (3) on over thirty occasions since the 1980s, dressed as a Transit worker to steal and sell tools (Lang: Tr. 759-60, 761, 765-66, 779-80).

to the People, that [Taylor] struck [Fesce] with an uppercut, after flailing and missing a number of punches, that as an immediate result of that, Mr. Fesce went back, struck his head on the edge of a bench and was rendered unconscious; is that not all evidence in the case?

[DEFENSE COUNSEL] GRIBETZ:  I don't believe it's credible evidence, Judge.

THE COURT:  . . . .

.  .  .  .

[T]he evidence must be viewed in the light most favorable to the People.  Viewing such evidence, viewing the evidence in that way, it is clear that the evidence, if accepted by the fact finder, is sufficient to make out each of the elements of the crime assault in the second degree with intent to cause physical injury, causing physical injury in a detention facility.

I specifically reject [defense counsel] Mr. Gribetz's claim that, as a matter of law, no reasonable fact finder could credit the testimony of the witness, Leon Lang. . . . [I]t is the job of the 12 jurors, the peers of this defendant, who will make a determination ultimately about [Lang's] credibility.

As to counsel's rather continued strained argument about the absence of a connection between Mr. Taylor's conduct and the ultimate death of Mr. Fesce, again, the People are not required to prove as part of an assault charge that Mr. Taylor caused the death of Mr. Fesce and that repeated persistent argument is lacking in any persuasive value.

(Tr. 849-50, 853-54.)

### Taylor's Defense Case at Trial

The defense called forensic pathologist Dr. Yong-Myun Rho as an expert witness. (Rho: Tr. 859.)  Dr. Rho reviewed Fesce's records from Lincoln Hospital and the medical examiner's office.  (Rho: Tr. 869-70.)  Dr. Rho testified that because the medical examiner's office did not conduct a microscopic examination of Fesce's tissue, it was impossible to determine when Fesce received the injury that caused his death.  (Rho: Tr. 871.)  Dr. Rho also could not determine what

caused Fesce to sustain blunt force trauma because the medical examiner's office did not conduct a pattern of injury study.  (Rho: Tr. 872-83.)  Dr. Rho did not know whether Fesce's injuries could have been caused by separate incidents (Rho: Tr. 873) and was not certain if Fesce sustained a "contrecoup contusion" (Rho: Tr. 874).

The defense rested (Tr. 944) and moved to dismiss the case:

> For all the reasons I stated in my earlier application, . . . I don't believe the People have established beyond a reasonable doubt.  I'm looking at the credible evidence of one witness and I don't find that witness credible. . . . as a matter of law. And also, the causal[i]ty issue that I had mentioned and the dicta that I had read from the Anthony M. Case, Court of Appeals.

(Tr. 947.)  Justice Gross denied the motion.  (Tr. 948.)

### The Jury Charge

As part of the jury charge, Justice Gross instructed the jury about the prosecution's burden of proof beyond a reasonable doubt.  (Charge: Tr. 925-86.)  Justice Gross also instructed that the jury's verdict should be based only on the evidence or lack or insufficiency of the evidence, not the number of witnesses who testified or the length of testimony.   (Charge: Tr. 987-88.) Specifically, Justice Gross instructed that "testimony by even a single witness is in and of itself sufficient to justify a verdict of guilty provided, of course, that the witness' testimony establishes beyond a reasonable doubt all the elements of the crime you're considering."  (Charge: Tr. 987.) Justice Gross also instructed the jury as to witness credibility:

> Members of the jury, as judges of the facts, you and you alone determine the truthfulness and accuracy of the testimony of each witness.  You must decide whether a witness told the truth and was accurate or instead testified falsely or was mistaken. . . .  If you find that any witness has intentionally testified falsely as to any material fact, you may then disregard the witness' entire testimony or you may disregard so much of it as you find was untruthful . . . .

(Charge: Tr. 991.)  Justice Gross listed multiple factors for the jury to consider in deciding whether a witness is credible, including the witness' bias or interest in the case, the consistency of the testimony and whether the witness had a motive to lie.  (Charge: Tr. 993-94.)  Justice Gross also instructed that a witness' criminal history may be a factor to consider:

> You may consider whether a witness has been convicted of a crime or has engaged in criminal conduct, and, if so, whether and to what extent it affects the truthfulness of the witness' testimony.  You're not required to reject the testimony of a witness who has been convicted of a crime or is engaged in criminal conduct or to accept the testimony of a witness who has not.  You may, however, consider whether a witness' criminal conviction or conduct has affected the truthfulness of the witness' testimony.

(Charge: Tr. 994).

> Finally, Justice Gross instructed the jury as to the elements of second degree assault:

> Turning now . . . to the elements of the one crime on the verdict sheet, that crime is assault in the second degree.  Under our law, a person is guilty of assault in the second degree when having been charged with a crime and while confined in a correctional facility with intent to cause physical injury to another person, he or she causes such injury to that person.

> Some of those terms have their own special meaning in our law.  Physical injury means impairment of physical condition or substantial pain.  Intent means conscious objective or purpose.  Thus, a person acts with intent to cause physical injury to another when that person's conscious objective or purpose is to cause physical injury to another.  Intent does not require premeditation.  In other words, intent does not require advance planning, nor is it necessary that the intent be in a person's mind for any particular length of time.  The intent can be formed and need only exist at the very moment the person engages in prohibited conduct or acts to cause the prohibited result, and not at any earlier time.

> . . . .

> In order for you to find the defendant, Kenny Taylor, guilty of this crime, the sole count on the verdict sheet, assault in the second degree, the People are required to prove from all the evidence in the case beyond a reasonable doubt each of the following three elements:  One, that on or about October 12, 2004, in the county of

the Bronx, the defendant caused physical injury to the complainant; second, that the defendant did so with the intent to cause physical injury to the complainant; and three, that at such time, the defendant was charged with a crime and was confined in a correctional facility pursuant to that charge.

The complainant's name in this case, Ronald Fesce.  If you find that the People have proved beyond a reasonable doubt each of those three elements, you must find the defendant guilty of assault in the second degree as charged in the only crime on the verdict sheet.  On the other hand, if you find the People have not proved beyond a reasonable doubt one or more of those three elements, then you must find the defendant not guilty of assault in the second degree.

(Charge: Tr. 999-1002.)  There were no objections or exceptions to the Charge.  (Tr. 1005.)

**Verdict**

On November 20, 2006, the jury convicted Taylor of second degree assault.  (Tr. 1022-24.)

**Taylor's C.P.L. § 330 Motion**

On December 2, 2006, Taylor submitted a pro se C.P.L. § 330.30 motion to set aside his conviction, arguing that "the verdict was against the weight of the evidence," that is, "the People never proved every element" of second degree assault, including physical injury, intent to cause physical injury and causation.  (Dkt. No. 14: Taylor 2/18/11 Traverse Ex. A: C.P.L. § 330.30 Motion at 2-12.)  On December 9, 2006, Taylor submitted a supplement to his C.P.L. § 330.30 motion, arguing that "[t]he [P]eople failed to establish that [the] victim had sustained any 'substantial pain'" and "cannot even establish causation."  (Taylor 2/18/11 Traverse Ex. A: Supp. Notice of C.P.L. § 330.30 Motion at 3.)

On February 8, 2007, Justice Gross denied Taylor's § 330.30 motion.  (Taylor 2/18/11 Traverse Ex. C: Justice Gross 2/8/07 Decision at 9.)  Specifically, Justice Gross found that "the

evidence adduced at trial established beyond a reasonable doubt that defendant intended to cause and had, in fact, caused physical injury to Ronald Fesce while confined in a holding cell in Bronx County Criminal Court." (Id. at 3.)  Justice Gross held that the testimony of a single witness, Lang, is legally sufficient to prove the charges and the issue of Lang's credibility was for the jury.  (Id. at 4, 5.)

**Sentence**

On February 13, 2007, Justice Gross sentenced Taylor to seven years imprisonment, to run consecutively with Taylor's prior consecutive sentences of 4 1/2 to 9 years and 1 1/2 to 3 years.  (Dkt. No. 5: Chamoy Aff. ¶ 6 & Ex. 1: Taylor 1st Dep't Br. at 12-13; Chamoy Aff. Ex. 3: State 1st Dep't Br. at 1.)

**Taylor's Direct Appeal**

Represented by new counsel (the Center for Appellate Litigation), Taylor appealed to the First Department, claiming, inter alia, that the evidence was legally insufficient to prove his guilt beyond a reasonable doubt because his "conviction hinged on the sole testimony of an inherently unreliable witness, inmate Leon Lang, who had an extensive history of lying and lied under oath at this trial." (Dkt. No. 5: Chamoy Aff. Ex. 1: Taylor 1st Dep't Br. at 14-19.)  Taylor also submitted a pro se supplemental brief claiming, inter alia, that there was "insufficient evidence to prove that on October 12, 2004, [Taylor] caused the essential element of a physical injury, beyond a reasonable doubt, upon Mr. Fesce." (Chamoy Aff. Ex. 2: Taylor Pro Se 1st Dep't Supp. Br. at 28-34.)

On January 22, 2009, the First Department unanimously affirmed Taylor's conviction,

holding:

> The verdict was based on legally sufficient evidence and was not against the weight of the evidence. There is no basis for disturbing the jury's determinations concerning credibility, including its evaluation of the criminal background of the People's main witness and the inconsistency between his trial and grand jury testimony, which we find to be satisfactorily explained.
>
> [Taylor's] argument that a relative of the victim gave prejudicial testimony is without merit. [Taylor's] remaining pro se claims are unpreserved and we decline to review them in the interest of justice. As an alternative holding, we also reject them on the merits.

People v. Taylor, 58 A.D.3d 533, 533, 870 N.Y.S.2d 791, 791 (1st Dep't 2009).

The New York Court of Appeals denied leave to appeal on April 6, 2009, People v.

Taylor, 12 N.Y.3d 822, 881 N.Y.S.2d 29 (2009), and denied Taylor's pro se motion for

reconsideration on July 13, 2009, People v. Taylor, 12 N.Y.3d 929, 884 N.Y.S.2d 711 (2009).

**Taylor's Habeas Petition**

Taylor's pro se federal habeas corpus petition asserts that his conviction was

unconstitutional "because there was no evidence, at all, to prove the statutory element . . . of

physical injury."  (Dkt. No. 2: Pet. ¶ 13.)  Taylor also argues in his Traverse that "he is actually

innocent of the crime." (Dkt. No. 14: Taylor 2/18/11 Traverse at 1.)

## ANALYSIS

### I.   THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[2]

---

[2]   See also, e.g., Knowles v. Mirzayance, 129 S. Ct. 1411, 1418 (2009); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Portalatin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'" (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[3/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[4/]  "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42; accord, e.g., Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 129 S. Ct. 1312 (2009).  "A petitioner can not win habeas relief solely by demonstrating that the

---

[3/]    Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[4/]    Accord, e.g., Georgison v. Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Dunlap v. Burge, 583 F.3d 160, 164 (2d Cir.), cert. denied, 130 S. Ct. 642, (2009); Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Portalatin v. Graham, 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); Hargett v. Giambruno, 291 F. App'x 402, 403 (2d Cir. 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-10 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

state court unreasonably applied Second Circuit precedent."  <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 110;

<u>accord</u>, <u>e.g.</u>, <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[5/]

In <u>Williams</u>, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[6/]  However,

---

[5/]    <u>Accord</u>, <u>e.g.</u>, <u>Knowles</u> v. <u>Mirzayance</u>, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court." (quotation omitted)); <u>Brown</u> v. <u>Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 123 S. Ct. at 1173-74; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d 36, 47-48 (2d Cir. 2010); <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d 149, 156 (2d Cir. 2009), <u>cert. denied</u>, 131 S. Ct. 320 (2010); <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 164; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d 238, 242 (2d Cir. 2006), <u>cert. denied</u>, 549 U.S. 1215, 127 S. Ct. 1267 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 219 (2d Cir.), <u>cert. denied</u>, 546 U.S. 889, 126 S. Ct. 215 (2005); <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 127-28.

[6/]    <u>Accord</u>, <u>e.g.</u>, <u>Waddington</u> v. <u>Sarausad</u>, 555 U.S. 179, 129 S. Ct. 823, 831 (2009); <u>Brown</u> v.
(continued...)

"[t]he term 'unreasonable' is . . . difficult to define."  Williams v. Taylor, 529 U.S. at 410, 120 S. Ct.

at 1522.  The Supreme Court made clear that "an unreasonable application of federal law is different

from an incorrect application of federal law."  Id.[7/]  Rather, the issue is "whether the state court's

application of clearly established federal law was objectively unreasonable."  Williams v. Taylor,

529 U.S. at 409, 120 S. Ct. at 1521.[8/]  "Objectively unreasonable" is different from "clear error."

---

[6/]     (...continued)
Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct.
at 2534-35; Bierenbaum v. Graham, 607 F.3d at 48; Brisco v. Ercole, 565 F.3d 80, 87 (2d
Cir.), cert. denied, 130 S. Ct. 739 (2009); Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009);
Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert.
denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad
v. Greiner, 337 F.3d at 181.

[7/]     See also, e.g., Renico v. Lett, 130 S. Ct. 1855, 1862 (2010); Waddington v. Sarausad, 129
S. Ct. at 831; Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at
1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply
because that court concludes in its independent judgment that the state-court decision applied
[a Supreme Court case] incorrectly.'" (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25,
123 S. Ct. 357, 360 (2002))); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Dunlap
v. Burge, 583 F.3d at 165-66 (A "federal court might agree with a petitioner that the relevant
federal law should have been interpreted differently than the way it was interpreted by the
state court yet still conclude that the state court's application of the federal law was not
unreasonable."); Brisco v. Ercole, 565 F.3d at 87-88; Jones v. West, 555 F.3d at 96; Davis
v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d
at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray,
396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25;
DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the
state court's decision was not an unreasonable application of, or contrary to, clearly
established federal law as defined by Section 2254(d), we may not grant habeas relief even
if in our judgment its application was erroneous.").

[8/]     Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct.
at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti,
537 U.S. at 25-27, 123 S. Ct. at 360-61; Portalatin v. Graham, 624 F.3d at 79; Dunlap v.
(continued...)

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  This is a "'substantially higher threshold'" than incorrectness.  Renico v. Lett, 130 S. Ct. at 1862; accord, e.g., Knowles v. Mirzayance, 129 S. Ct. at 1420.[9/]  Federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

"[T]he range of reasonable judgment can depend in part on the nature of the relevant rule."  Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149.[10/]  "Even if the state court issued

---

[8/]      (...continued)
Burge, 583 F.3d at 165; Davis v. Grant, 532 F.3d at 140; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[9/]      However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord, e.g., Brisco v. Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the 'unreasonable application' standard 'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[10/]      The Supreme Court explained:

          [T]he range of reasonable judgment can depend in part on the nature of the relevant
          rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule
                                                                              (continued...)

a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . .

unless application of a <u>correct</u> interpretation of that [Supreme Court] decision leads to the

conclusion that his rights were violated.'"  <u>Cousin</u> v. <u>Bennett</u>, 511 F.3d 334, 339 (2d Cir.), <u>cert.</u>

<u>denied</u>, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

      Moreover, the Second Circuit has held "that a state court determination is reviewable

under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme

Court defined, legal principle to situations which that principle should have, in reason, governed."

<u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 45.[11]

---

[10]     (...continued)
            may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

      <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2149; <u>accord</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 786; <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. at 1864; <u>Knowles</u> v. <u>Mirzayance</u>, 129 S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d at 157; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 166; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243.

[11]    <u>Accord</u>, <u>e.g.</u>, <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 47-48; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140-41; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>see</u> <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." (citations omitted)).

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Renico v. Lett, 130 S. Ct. at 1862 ("AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)); Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519. "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to th[e] record in an unreasonable manner." Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Georgison v. Donelli, 588 F.3d at 154. As the Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be. . . . [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decisions conflict with [the Supreme] Court's precedents. It goes no further. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 131 S. Ct. at 786-87.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies.

> Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

Harrington v. Richter, 131 S. Ct. at 784 (citations to Sellan v. Kuhlman, 261 F.3d at 312, & other cases omitted); accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Early v. Packer, 537

U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Wilson v. Mazzuca, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'").[12]  Even if the federal court holds an evidentiary hearing, the deferential AEDPA review standard applies.  Wilson v. Mazzuca, 570 F.3d at 501-02 ("Where . . . a district court has performed additional fact finding, the court must then ask whether the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' in light of any newly-discovered facts. . . . [W]e are directed to apply the same AEDPA standard that would otherwise be in force, now in light of the new information that has been obtained through a § 2254(e) hearing." (citation omitted)).

       "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

---

[12]       See also, e.g., Wade v. Herbert, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 131 S. Ct. at 784-85.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless."  Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations:  "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48; Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220.  "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence.");  Brown v. Alexander, 543 F.3d at 100; Lynn v. Bliden, 443 F.3d at 246-47.

## II.   TAYLOR'S INSUFFICIENCY OF THE EVIDENCE CLAIM IS PROCEDURALLY BARRED BY ADEQUATE AND INDEPENDENT STATE LAW GROUNDS, AND IN ANY EVENT IS MERITLESS

Taylor claims that the evidence at trial was legally insufficient to prove "physical injury," a claim raised in his pro se First Department supplemental brief.  (Dkt. No. 5: Chamoy Aff. Ex. 2 : Taylor Pro Se 1st Dep't Supp. Br. at 28-31.)  The First Department rejected this claim as "unpreserved."  People v. Taylor, 58 A.D.3d 533, 533, 870 N.Y.S.2d 791, 791 (1st Dep't), appeal

denied, 12 N.Y.3d 822, 881 N.Y.S.2d 29 (2009). "As an alternative holding," the First Department also rejected Taylor's legal sufficiency claim "on the merits." Id.

**A.      The Adequate & Independent State Ground Doctrine**

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[13]

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state . . . that its judgment rest[ed] on a state procedural bar.'" Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724). "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and

---

[13]      See also, e.g., Walker v. Martin, --- S. Ct. ----, No. 09-996, 2011 WL 611627 at *6 (Feb. 23, 2011); Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Reyes v. Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[14]  Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas."  Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

State courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim-every state appeal, every denial of state collateral review-in order that federal courts might not be bothered with reviewing state law and the record in the case.

Coleman v. Thompson, 501 U.S. at 739, 111 S. Ct. at 2559.

Unlike the situation where the state court holds that claims were either unpreserved or without merit, which the Second Circuit has found is usually too ambiguous to preclude habeas review, e.g., Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001), here the First Department explicitly found Taylor's insufficient evidence of physical injury claim unpreserved.  The fact that the First Department alternatively rejected the claim on its merits does not change the result.  See, e.g., Green v. Travis,  414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.");  Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 & n.4 (2d Cir.

---

[14]    See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved"); Glenn v. Bartlett, 98 F.3d at 724-25 & n.3 (state decision which denied prosecutorial misconduct claim as not preserved for appellate review represented an independent and adequate state procedural ground even though court addressed merits of claim "in the interests of justice"); Velasquez v. Leonardo, 898 F.2d at 9 (state decision which denied claims as procedurally barred but then alternatively addressed merits rested on adequate and independent state grounds).  Thus, the First Department's decisions as to Taylor's claim regarding sufficiency of the evidence of physical injury unambiguously rested on a state procedural ground.

The Supreme Court has established that "the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts."  Simpson v. Portuondo, 01 Civ. 8744, 2002 WL 31045862 at *4 (S.D.N.Y. June 4, 2002) (citing James v. Kentucky, 466 U.S. 341, 348-49, 104 S. Ct. 1830, 1835 (1984)); accord, e.g., Walker v. Martin, 2011 WL 611627 at *7 ("To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'"); Lee v. Kemna  534 U.S. 362, 376, 122 S. Ct. 877, 885 (2002) ("[V]iolation of 'firmly established and regularly followed' state rules . . . [are] adequate to foreclose review of a federal claim.").[15]

---

[15]    See, e.g., Clark v. Perez, 510 F.3d 382, 391 (2d Cir.) ("To determine whether a state procedural bar is 'adequate to support the judgment,' a federal habeas court should look to whether 'the state rule at issue . . . is firmly established and regularly followed.'" (citations omitted, cert. denied, 129 S. Ct. 130 (2008); Murden v. Artuz, 497 F.3d 178, 192 (2d Cir. 2007) (To be "adequate," the state procedural requirement must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case."), cert. denied, 552 U.S. 1150, 128 S. Ct. 1083 (2008); Cotto v. Herbert, 331
(continued...)

Even if a state rule is discretionary, it can serve as an adequate and independent state ground, as the Supreme Court has made clear:

> We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review.  Nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine.  To the contrary, a discretionary rule can be "firmly established" and "regularly followed"-even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.

Beard v. Kindler, 130 S. Ct. 612, 618 (2009); accord, e.g., Walker v. Martin, 2011 WL 611627 at *4 (In Beard, the Supreme "Court clarified that a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default.").

New York's contemporaneous objection rule, codified in Criminal Procedure Law § 470.05(2), provides that issues "not raised at trial may not be considered for the first time on appeal."  People v. Thomas, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[16]  Moreover, a party must make a specific protest at the time of a claimed error to

---

[15]    (...continued)
F.3d 217, 239 (2d Cir. 2003) ("'State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims.'"); Nunez v. Conway, 07 Civ. 7560, 2010 WL 234826 at* 9 (S.D.N.Y. Jan. 20, 2010); Roldan v. Ercole, 08 Civ. 6548, 2009 WL 2191176 at *3 (S.D.N.Y. July 20, 2009).

[16]    C.P.L. § 470.05(2) provides, in relevant part:

> For the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.  Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the
> (continued...)

preserve an issue for appellate review.  E.g., People v. Hardy, 4 N.Y.3d 192, 197 n.3, 791 N.Y.S.2d

513, 517 n.3 (2005).  Hence, if a party neglects to raise a claim in the trial court, or fails to specify

the grounds for an objection (either because the objection is general, or because it specifies a

different ground than that raised on appeal), state appellate courts generally will not consider that

claim.  E.g., People v. Cona, 49 N.Y.2d 26, 33, 424 N.Y.S.2d 146, 148 (1979); see also, e.g.,  Olivo

v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *10 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) ("Under

New York law, a party's failure to specify the grounds for its general objection also renders its

argument unpreserved for appellate review." (citing N.Y. cases)), report & rec. adopted, 2006 WL

2689889 (S.D.N.Y. Sept. 19, 2006).

> **B.      Taylor's Motion to Dismiss Did Not Preserve Taylor's Sufficiency of the Evidence of Physical Injury Claim**

To properly preserve a challenge to the legal sufficiency of a conviction, "a defendant

must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error

being urged."  People v. Hawkins, 11 N.Y.3d 484, 492, 872 N.Y.S.2d 395, 399 (2008).

Taylor did not preserve his sufficiency of the evidence as to physical injury claim.

Taylor's trial counsel raised two specific points in his dismissal motions -- (1) Lang's testimony was

not credible; and (2) there was no causal connection between Fesce's physical injuries and Taylor's

---

16/      (...continued)

> court, or if in response to a protest by a party, the court expressly decided the
> question raised on appeal.  In addition, a party who without success has either
> expressly or impliedly sought or requested a particular ruling or instruction, is
> deemed to have thereby protested the court's ultimate disposition of the matter or
> failure to rule or instruct accordingly sufficiently to raise a question of law with
> respect to such disposition or failure regardless of whether any actual protest thereto
> was registered.

alleged assault; Taylor's counsel did not make any arguments about the sufficiency of the evidence on the element of physical injury.  (See pages 6-8 above.)

Taylor mischaracterizes his counsel's causality argument as preserving his habeas claim that there was no evidence of physical injury.  (Dkt. No. 13: Taylor 2/10/11 Traverse at 1.) The argument that Taylor did not cause Fesce's injuries is clearly distinct from an argument that Fesce did not sustain any physical injuries, and the latter argument was not made in either of Taylor's counsel's two motions to dismiss.  (See pages 6-8 above.)  Thus, Taylor cannot rely on his counsel's motions to preserve his insufficient evidence of physical injury claim.  See, e.g., Acevedo v. Smith, 08 Civ. 9899, 2011 WL 476607 at *5 (S.D.N.Y. Feb. 9, 2011) (Scheindlin, D.J.) (petitioner's claim that the evidence was insufficient to prove depraved indifference murder as opposed to intentional murder procedurally barred because he had "moved to dismiss solely on the ground that there was no evidence to indicate that he committed this crime"); Gibbons v. Ercole, 05 Civ. 9413, 2008 WL 8049268 at *14 (S.D.N.Y. Sept. 24, 2008) (petitioner's insufficiency of the evidence claim unpreserved where his counsel moved to dismiss at trial but "[a]t no time did he refer to the failure of the evidence to establish specific elements"), report & rec. adopted, 2010 WL 3199869 (S.D.N.Y. Aug. 12, 2010).

It is well settled that failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent bar to federal habeas review.  See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S. Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state ground); Murray v. Carrier, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-48, 2650 (1986) (same); Brown v. Ercole, 353

F. App'x 518, 520 (2d Cir. 2009) ("[A]pplication of New York's contemporaneous objection rule may bar federal habeas review."); <u>Garvey</u> v. <u>Duncan</u> 485 F.3d 709, 720 (2d Cir. 2007) (Petitioner's claim "was not raised either by specific objection or by the trial court's decision.  As a consequence, . . . [w]e need not reach or decide the defendant's federal claims, since there was an independent and adequate state law ground for the state appellate court's decision to affirm the defendant's conviction."); <u>Richardson</u> v. <u>Greene</u>, 497 F.3d 212, 219 (2d Cir. 2007) ("[I]n accordance with New York case law, application of the state's preservation rule is adequate-<u>i.e.</u>, firmly established and regularly followed."); <u>Franco</u> v. <u>Walsh</u>, 73 F. App'x 517, 518 (2d Cir. 2003) (finding petitioner's claim of an erroneous jury charge procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved."); <u>Garcia</u> v. <u>Lewis</u>, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules") (citing <u>Bossett</u> v. <u>Walker</u>, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review), <u>cert. denied</u>, 514 U.S. 1054, 115 S. Ct. 1436 (1995), & <u>Fernandez</u> v. <u>Leonardo</u>, 931 F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)), <u>cert. denied</u>, 502 U.S. 883, 112 S. Ct. 236 (1991)).<u>17/</u>

---

[17/]   <u>See also</u>, <u>e.g.</u>, <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d 721, 724-25 (2d Cir. 1996) (failure to object constituted adequate and independent state ground), <u>cert. denied</u>, 520 U.S. 1108, 117 S. Ct. 1116 (1992); <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990) (violation of New York's contemporaneous objection rule is an adequate and independent state ground); <u>Figueroa</u> v. <u>Greiner</u>, 02 Civ. 2126, 2002 WL 31356512 at *11-12 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) ("The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state
(continued...)

Taylor also incorrectly claims that his C.P.L. § 330.30 motion preserved his sufficiency of the evidence of physical injury claim.  (See Taylor 2/10/11 Traverse at 2; Dkt. No. 14: Taylor 2/18/11 Traverse at 2.)  However, a C.P.L. § 330.30 claim cannot be addressed on appeal unless it was raised and properly preserved at trial.  See, e.g., People v. Davidson, 98 N.Y.2d 738, 739, 751 N.Y.S.2d 161, 162 (2002) ("Because defendant's constitutional challenge . . . was made for the first time on his motion pursuant to CPL 330.30, it was not properly preserved."); People v. Hines, 97 N.Y.2d 56, 61, 736 N.Y.S.2d 643, 646 (2001) ("A court adjudicating a CPL 330.30 motion may consider only issues of law which 'would require a reversal or modification of the judgment as a matter of law by an appellate court.'  Under this statutory standard, an insufficiency argument may not be addressed unless it has been properly preserved for review during the trial." (quoting C.P.L. § 330.30(1)); People v. Padro, 75 N.Y.2d 820, 821, 552 N.Y.S.2d 555, 555 (1990) ("A postverdict motion made pursuant to CPL 330.30 is not, by itself, ordinarily sufficient to preserve a 'question of law' within the meaning of CPL 470.05(2) and inasmuch as defendant failed to make appropriate objections during trial, the points presented by defendant are not preserved for review in this court."); see also, e.g., Brown v. Rivera, No. 06-CV-06274, 2009 WL 2222908 at *4 (W.D.N.Y. July 23, 2009) ("Since Petitioner first raised his insufficiency argument in his § 330.30 motion[,] . . .  that argument was not preserved for appeal.").

---

17/   (...continued)
      ground."); Jamison v. Smith, No. 94 CV 3747, 1995 WL 468279 at *2 (E.D.N.Y. July 26,
      1995) ("Courts in this circuit have consistently held that the failure to object
      contemporaneously . . . constitutes an adequate and independent basis for barring habeas
      review.").

The First Department thus properly found Taylor's pro se insufficient evidence of physical injury claim unpreserved, and that holding precludes federal habeas review of Taylor's claim.  See, e.g., Jones v. Marshall, 08 Civ. 5793, 2011 WL 9386 at *9 (S.D.N.Y. Jan. 3, 2011) (A "petitioner 'may not present a legal insufficiency argument through a New York Crim. Proc. L. [§ 330.30] motion to set aside the verdict unless it has been properly preserved for review during the trial by renewing his motion to dismiss at the close of all the evidence.'"  Accordingly, insufficiency claim barred from habeas review by independent and adequate state ground.); Martinez v. Berbary, No. 08-CV-6464, 2010 WL 4674302 at *8 (W.D.N.Y. Nov. 18, 2010) (same).

Accordingly, since the First Department's denial of Taylor's insufficient evidence of physical injury claim rests on an adequate and independent state procedural bar, Taylor's insufficiency of the evidence of physical injury habeas claim should be DENIED as procedurally barred.

### C.   Cause and Prejudice

Because there is an adequate and independent finding by the state courts that Taylor procedurally defaulted on his challenge to the sufficiency of the evidence as to physical injury, Taylor would have to "show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claims will result in a fundamental miscarriage of justice," i.e., a showing of "actual innocence."  Harris v. Reed,  489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & quotations omitted); accord, e.g., Walker v. Martin, --- S. Ct. ----, No. 09-996, 2011 WL 611627 at *6 (Feb. 23, 2011); Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995);

Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); see also cases cited at page 22 & n.13 above.

Taylor asserts the "fundamental miscarriage of justice" exception, arguing that he is "actually innocent."  (Dkt. No. 14: Taylor 2/18/11 Traverse at 1, 3.)

The Supreme Court has explained that the fundamental miscarriage of justice exception is "tied . . . to [a] petitioner's innocence" and exists to protect those who are "actually innocent."  Schlup v. Delo, 513 U.S. at 321, 324, 115 S. Ct. at 864-65.  Because "'actual innocence' means factual innocence, not mere legal insufficiency," Bousley v. United States, 523 U.S. 614, 623-24, 118 S. Ct. 1604, 1611 (1998); accord, e.g., Sweet v. Bennett 353 F.3d 135, 142 (2d Cir. 2003); Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002), "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37, 126 S. Ct. 2064, 2076-77 (2006) (emphasis added); see also, e.g., Schlup v. Delo, 513 U.S. at 324-27, 115 S. Ct. at 865-67 (fundamental miscarriage of justice must  be demonstrated by showing through "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."); Murden v. Artuz, 497 F.3d 178, 194 (2d Cir. 2007) ("'To demonstrate actual innocence a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'  This requires 'a stronger showing' than the showing of prejudice necessary to prevail on an ineffective assistance claim.  Actual innocence requires 'not

legal innocence but factual innocence.'" (citations omitted)), <u>cert. denied</u>, 552 U.S. 1150, 128 S. Ct. 1083 (2008).

Accordingly, the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "'extraordinary case[s].'" <u>Schlup</u> v. <u>Delo</u>, 513 U.S. at 321-22, 115 S. Ct. at 865; <u>see also</u>, <u>e.g.</u>, <u>Morrison</u> v. <u>Ercole</u>, 07 Civ. 3576, 2009 WL 161040 at *6 (S.D.N.Y. Jan. 16, 2009) ("The Second Circuit has emphasized that the type of evidence on which claims of actual innocence may be based is strictly limited and that petitioners must meet a 'demanding standard' in order to take advantage of this 'gateway.'").

Taylor fails to meet the heavy burden required in <u>Schlup</u> and <u>House</u>. As part of his petition, Taylor baldly asserts that he is "actually innocent" without providing further explanation. (Taylor 2/18/11 Traverse at 1, 3.)  Taylor fails to provide any <u>new</u> evidence to support his actual innocence claim.  Rather, he merely challenges the sufficiency of the evidence at trial.  (Taylor 2/18/11 Traverse at 3-10.)  Taylor's actual innocence claim fails because "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." <u>Schlup</u> v. <u>Delo</u>, 513 U.S. at 316, 115 S. Ct. at 861; <u>accord</u>, <u>e.g.</u>, <u>Celaj</u> v. <u>Artuz</u>, 49 F.App'x 331, 334 (2d Cir. 2002) (quoting <u>Schlup</u>), <u>cert. denied</u>, 538 U.S. 912, 123 S. Ct. 1495 (2003); <u>Calderon</u> v. <u>Perez</u>, 10 Civ. 2562, 2011 WL 293709 at *21 (S.D.N.Y. Jan. 28, 2011) (Peck, M.J.) (Petitioner fails to meet <u>Schlup</u> burden when he "essentially relies on his legal sufficiency claim" and "fails to provide any <u>new</u> evidence to support his actual innocence claim."); <u>Lasso-Reina</u> v. <u>Haponick</u>, 05 Civ. 8817, 2009 WL 3334843 at *9 (S.D.N.Y. Oct. 14, 2009)

("Moreover, the petitioner is expected to establish actual innocence based on new evidence rather than what was presented at trial."); <u>Fernandez</u> v. <u>Artus</u>, 07 Civ. 2532, 2009 WL 1586271 at *15 (S.D.N.Y. June 8, 2009) (Peck, M.J.) ("To claim actual innocence, a petitioner must show more than the prosecution's evidence was weak or even insufficient; rather, he must present new evidence (such as DNA evidence) of his innocence.").

Taylor has not shown actual innocence  and therefore his sufficiency of the evidence of physical injury habeas claim is barred by adequate and independent state grounds.

**D.    <u>In Any Event, Taylor's Insufficiency of the Evidence Claim is Meritless</u>**

Even if this Court were to reach the merits, Taylor's sufficiency of the evidence claim is meritless.

"'[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979) (quoting <u>In re Winship</u>, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970)).  However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. at 317, 99 S. Ct. at 2788.  Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254-if the settled procedural prerequisites for such a claim have otherwise been satisfied-the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. at 324, 99 S. Ct. at 2791-92.

The petitioner bears a very heavy burden:

> [T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant.  Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt.  In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

United States v. Carson, 702 F.2d 351, 361 (2d Cir.) (citations omitted), cert. denied, 462 U.S. 1108, 103 S. Ct. 2457 (1983).

The habeas court's review of the jury's findings is limited:

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. at 318-19, 99 S. Ct. at 2789 (citations omitted).

The Jackson v. Virginia "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson v. Virginia, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16; accord, e.g., Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir. 1993) ("In considering a petition for writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime.").

Taylor was convicted of second degree assault under Penal Law § 120.05(7), which provides:

> A person is guilty of assault in the second degree when . . . [h]aving been charged with or convicted of a crime and while confined in a correctional facility, as defined in [Correction Law § 40(3)], pursuant to such charge or conviction, with intent to cause physical injury to another person, he causes such injury to such person or to a third person.

Penal Law § 120.05(7).  Penal Law § 10.00(9) defines "physical injury" as an "impairment of physical condition or substantial pain."  Penal Law § 10.00(9).

The New York Court of Appeals has explained that "substantial pain" means "more than slight or trivial pain."  People v. Chiddick, 8 N.Y.3d 445, 447, 834 N.Y.S.2d 710, 711 (2007); see, e.g., People v. Henderson, 92 N.Y.2d 677, 680, 685 N.Y.S.2d 409, 410 (1999) ("In defining 'physical injury' as consisting of 'substantial pain,' the Legislature intended to set a threshold of something more than a mere technical battery."  Testimony of "substantial pain, swelling and contusions, following kicks, must be deemed sufficient to constitute 'physical injury.'"); In the Matter of Philip A., 49 N.Y.2d 198, 201, 424 N.Y.S.2d 418, 420 (1980) (The definition of physical injury excludes "'petty slaps, shoves, kicks and the like . . . .'").  "Pain need not, however, be severe or intense to be substantial."  People v. Chiddick, 8 N.Y.3d at 447, 834 N.Y.S.2d at 711-12 (Evidence sufficient to establish "substantial pain" and therefore "physical injury" where defendant bit victim's fingernail, causing nail to crack and victim's finger to bleed, victim said his pain "was in between '[a] little' and 'a lot,'" and "sought medical treatment for the wound defendant inflicted.").  The New York Court of Appeals has outlined several factors relevant to the determination of whether pain is "substantial" within the meaning of the statute:  (1) whether the injury suffered "would normally be expected to bring with it more than a little pain"; (2) the victim's "subjective

Case 1:10-cv-05262-SAS   Document 15   Filed 03/08/11   Page 36 of 42

description of what he felt"; (3) whether the victim sought medical treatment; and (4) the defendant's motive in inflicting the harm.  People v. Chiddick, 8 N.Y.3d at 447-48, 834 N.Y.S.2d at 712.

The prosecution offered ample evidence that Fesce sustained a "physical injury" during his fight with Taylor.  Taylor punched Fesce in the jaw with an uppercut.  (See pages 2-3 ___ above.)  Immediately after being punched, Fesce fell to the holding cell floor and hit his head on the bench.  (See page 3 above.)   Fesce's body became limp, the back of his head swelled, he vomited and spit up blood.  (See page 3 above.)  When inmates tried to help Fesce sit up, he kept falling and hitting his head, and later had trouble walking to the courtroom.  (See page 3 above.)  The next morning, Captain Santa Maria and Officers Howard and Brown all observed discoloration to the area around Fesce's right eye.  (See pages 3-4 above.)  On October 14, 2004, Captain Santa Maria and Officer Pruitt observed that Fesce had garbled speech, black-and-blue eyes, was incoherent and unable to walk.  (See page 4 above.)  Fesce's autopsy revealed that he died from "blunt force trauma of head with cerebral contrecoup contusion, hematomas and skull fractures," injuries that were consistent with Lang's description of the fight.  (See page 5 above.)

The totality of the testimony proved that Fesce suffered "injury well beyond the minimal harm caused by 'petty slaps, shoves, kicks and the like.'"  Foster v. Miller, 04 Civ. 7990, 2007 WL 1893726 at *8 (S.D.N.Y. June 29, 2007) (Evidence sufficient to prove "physical injury" where petitioner punched victim in the head and face, causing "a split lip, headaches that lasted two or three days, and pain that persisted for a week and which he treated with Tylenol."); see, e.g., Coke v. Superintendent, Green Haven Corr. Facility, No. 06-CV-811, 2010 WL 475274 at *3 (W.D.N.Y. Feb. 5, 2010) (Evidence sufficient to show physical injury where petitioner hit victim

"with a belt on her right calf," causing a cut, some bruising and pain that "lasted for over a week and . . . interfered with [victim's] ability to get dressed and play sports."); <u>Smith</u> v. <u>Duncan</u>, 03 Civ. 0910, 2004 WL 859201 at *7 (S.D.N.Y. Apr. 21, 2004) ("Evidence that [petitioner] punched [victim] hard enough to knock him to the floor, to cause a bump and bruising, and to result in a week of pain each time the victim tried to chew is sufficient to establish the element of physical injury."), <u>report & rec. adopted</u>, 2004 WL 1857570 (S.D.N.Y. Aug. 18, 2004); <u>Valtin</u> v. <u>Hollins</u>, 248 F. Supp. 2d 311, 315-16 (S.D.N.Y. 2003) (Evidence sufficient to prove physical injury where victim sustained a "cut lower lip which bled and became swollen, had severe aches and pain in his head, felt nauseous and was significantly dizzy," and sought medical treatment.); <u>People</u> v. <u>Chiddick</u>, 8 N.Y.3d at 446-47, 834 N.Y.S.2d at 711-12 (described above); <u>People</u> v. <u>Guidice</u>, 83 N.Y.2d 630, 636, 612 N.Y.S.2d 350, 353 (1994) (Issue of physical injury or substantial pain are "generally" jury questions.  Evidence sufficient where defendant hit victim in the arm with a baseball bat causing numbness, discoloration, swelling and "substantial pain.").[18/]

---

[18/]    Jury findings of "physical injury" were upheld in the following cases:  <u>People</u> v. <u>Stearns</u>, 72 A.D.3d 1214, 1217, 898 N.Y.S.2d 348, 351 (3d Dep't) ("defendant backhanded [victim] across the jaw," resulting in severe pain and "trouble chewing for days after the incident"), <u>appeal denied</u>, 15 N.Y.3d 778, 907 N.Y.S.2d 467 (2010); <u>People</u> v. <u>Perkins</u>, 68 A.D.3d 494, 494, 890 N.Y.S.2d 528, 529 (1st Dep't 2009) ("defendant hit the victim on the nose with a pistol and knocked her down, causing bruising and pain in her nose and shoulder which led her to take pain relievers for a week"), <u>appeal denied</u>, 14 N.Y.3d 891, 903 N.Y.S.2d 779 (2010); <u>People</u> v. <u>Witt</u>, 56 A.D.3d 324, 325, 868 N.Y.S.2d 18, 19 (1st Dep't 2008) ("defendant banged [victim's] head against a concrete or brick wall, causing a lump on the back of her head which lasted about two weeks"), <u>appeal denied</u>, 11 N.Y.3d 931, 874 N.Y.S.2d 17 (2009); <u>People</u> v. <u>Winchell</u>, 46 A.D.3d 1096, 1098, 847 N.Y.S.2d 732, 734 (3d Dep't 2007) ("defendant's 'head-butting' [victim] caused a swollen nose and two black eyes and necessitated the use of painkillers for two weeks"), <u>appeal denied</u>, 10 N.Y.3d 818, 857 N.Y.S.2d 51 (2008); <u>People</u> v. <u>Haith</u>, 44 A.D.3d 369, 370, 844 N.Y.S.2d 10, 11 (1st Dep't 2007) (defendant "knocked [victim] to the ground and dragged her along the street, causing
(continued...)

To the extent this Court liberally construes Taylor's pro se habeas sufficiency of the evidence claim as also raising a claim that Lang was not credible, such claim lacks merit.

The law is well established that questions of witness credibility are jury questions and a federal habeas court may not reassess the jury's finding of credibility: "'[f]ederal habeas courts

---

18/     (...continued)
abrasions, bruising and swelling"), appeal denied 9 N.Y.3d 1034, 852 N.Y.S.2d 20 (2008); People v. Stapleton, 33 A.D.3d 464, 465, 823 N.Y.S.2d 32, 33 (1st Dep't) (defendant punched victim twice, causing "a swollen temple" and pain lasting for two days), appeal denied, 7 N.Y.3d 904, 826 N.Y.S.2d 613 (2006); People v. James, 2 A.D.3d 291, 291, 769 N.Y.S.2d 38, 38 (1st Dep't 2003) ("The element of physical injury was established by evidence that defendant punched the victim twice in the face during the robbery, causing pain, swelling and headaches."), appeal denied, 2 N.Y.3d 741, 778 N.Y.S.2d 467 (2004); People v. Battle, 286 A.D.2d 625, 730 N.Y.S.2d 109, 109 (1st Dep't) (victim suffered a "bruised knee that caused him to walk with a limp for 10 days, as well as cuts on his arm and a stiff shoulder"), appeal denied, 97 N.Y.2d 678, 738 N.Y.S.2d 293 (2001); People v. Smith, 283 A.D.2d 208, 208, 726 N.Y.S.2d 12, 13 (1st Dep't) ("[D]efendant punched the victim on the side of the head during the robbery, causing a bump and a bruise with resulting soreness, as well as pain when eating for approximately a week thereafter."), appeal denied, 96 N.Y.2d 907, 730 N.Y.S.2d 806 (2001); People v. Clarke, 250 A.D.2d 619, 619-20, 673 N.Y.S.2d 153, 154 (2d Dep't) (defendant "inflicted blows" that caused "head pain" and "bruises to the arm" lasting a week), appeal denied, 92 N.Y.2d 924, 680 N.Y.S.2d 465 (1998); People v. Thomas, 226 A.D.2d 120, 120, 640 N.Y.S.2d 503, 504 (1st Dep't) (defendant kneed victim in the groin causing "such severe pain that he could not initially stand up and thereafter [had] stomach cramps and nausea for several days"), appeal denied, 88 N.Y.2d 886, 645 N.Y.S.2d 461 (1996); People v. Kim, 225 A.D.2d 496, 496, 639 N.Y.S.2d 813, 814 (1st Dep't) (victim "sustained scrapes to his hip, knee, hand, and arm, throbbing pain in his head and neck, pain in his foot, dizziness, rise in blood pressure and continued to have pain in his hip, leg and knee for two or three days"), appeal denied, 88 N.Y.2d 987, 649 N.Y.S.2d 394 (1996); People v. Valentine, 212 A.D.2d 399, 399, 622 N.Y.S.2d 683, 684 (1st Dep't) (victim "suffered a swollen and sore neck, back and arm after being pushed by defendant"), appeal denied, 85 N.Y.2d 944, 627 N.Y.S.2d 1006 (1995); People v. Pope, 174 A.D.2d 319, 320, 571 N.Y.S.2d 205 (1st Dep't) (upholding conviction where victim testified that one day after the robbery "his left little finger was 'very, very sore,' he could move the finger only 'painfully,' [and] the next morning it was 'throbbing' and he probably took an 'aspirin'"), appeal denied, 78 N.Y.2d 1079, 577 N.Y.S.2d 243 (1991); People v. Tellis, 156 A.D.2d 260, 260-61, 548 N.Y.S.2d 648, 649 (1st Dep't 1989) (defendant threw victim to the ground, resulting in "bruises on her right arm, back, and hip," bleeding, black and blue marks, and pain for two weeks), appeal denied, 76 N.Y.2d 743, 558 N.Y.S.2d 905 (1990).

are not free to reassess the facts specific credibility judgments by juries or to weigh conflicting testimony.  On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.'" <u>Vera</u> v. <u>Hanslmaier</u>, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (Peck, M.J.) (quoting <u>Anderson</u> v. <u>Senkowski</u>, No. CV-92-1007, 1992 WL 225576 at *3 (E.D.N.Y. Sept. 3, 1992), <u>aff'd mem.</u>, 992 F.2d 320 (2d Cir.1993)).[19]

---

[19]  See also, <u>e.g.</u>, <u>Bossett</u> v. <u>Walker</u>, 41 F.3d 825, 830 (2d Cir. 1994) ("Although appellants emphasize the lack of physical evidence connecting them to the murder and contend that the testifying witnesses were not credible, 'a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility.'"), <u>cert. denied</u>, 514 U.S. 1054, 115 S. Ct. 1436 (1995); <u>Martin</u> v. <u>Brown</u>, No. 08-CV-0316, 2010 WL 1740432 at *9 (E.D.N.Y. Apr. 29, 2010) ("It is well established that a habeas court may neither 'disturb the jury's findings with respect to the witnesses' credibility,' nor 'make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony.'" (citation omitted)); <u>Cruz</u> v. <u>Ercole</u>, 07 Civ. 9868, 2010 WL 245038 at *8 (S.D.N.Y. Jan. 20, 2010), <u>report & rec. adopted</u>, 2010 WL 4860668 (S.D.N.Y. Nov. 29, 2010); <u>Guity</u> v. <u>Ercole</u>, 07 Civ. 0728, 2007 WL 3284694 at *5 (S.D.N.Y. Nov. 6, 2007) ("This Court is unable to reassess the 'fact specific credibility judgments by juries or to weigh conflicting testimony [o]n collateral review[,]' and 'must presume that the jury resolved any questions of credibility in favor of the prosecution.'" (citation omitted)); <u>Murray</u> v. <u>Greene</u>, 06 Civ. 3677, 2006 WL 3751294 at *12 (S.D.N.Y. Dec. 21, 2006); <u>Huber</u> v. <u>Schriver</u>, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[M]ost of petitioner's argument rests on the suggestion that the eyewitness testimony was not credible and should not have been given enough weight to result in his conviction. . . . However, under both the state law. . . and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury . . . . "); <u>Carromero</u> v. <u>Strack</u>, 98 Civ. 3519, 1998 WL 849321 at *5 (S.D.N.Y. Nov. 19, 1998) (Peck, M.J.) (evidence sufficient where jury credited prosecution witnesses' testimony "despite some inconsistencies between their trial testimony and prior statements to the police and to the grand jury"); <u>Davis</u> v. <u>Senkowski</u>, No. 97-CV-2328, 1998 WL 812653 at *5 (E.D.N.Y. Aug. 6, 1998) ("The jury here chose to believe [the prosecution witness's] testimony despite any inconsistencies in the evidence, and I will not reassess that decision."); <u>Williams</u> v. <u>Bennet</u>, 97 Civ. 1628, 1998 WL 236222 at *5 (S.D.N.Y. Apr. 20, 1998) ("[Petitioner] relies on inconsistencies in his victim's trial testimony as compared to her statements to the police, the District Attorney's office and before the grand jury.  These inconsistencies were placed before the jury by the defense, which made them a central focus of its case.  The jury's decision to credit [the victim's] testimony, despite its inconsistencies, over [petitioner's]
(continued...)

The jury heard Lang's testimony, Taylor's counsel's cross-examination about Lang's criminal history, and Taylor's counsel's closing argument (Tr. 950-63) attacking Lang's credibility. The jury chose to believe Lang, and this Court cannot reverse the jury's conclusion.

The fact that Lang was the only witness to testify that Taylor assaulted Fesce  -- with an uppercut punch to the jaw that caused Fesce to fall and hit his head on the bench -- does not change the result.  See, e.g., United States v. Frampton, 382 F.3d 213, 222 (2d Cir.) ("'[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction.'"), cert. denied, 543 U.S. 1037, 125 S. Ct. 815 (2004); Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983) ("[T]his was 'not a case in which the sole witness was uncertain of his identification . . . [n]or is it one of testimony incredible as a matter of law.'"); Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficiency claim, holding that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony); United States v. Danzey, 594 F.2d 905, 916 (2d Cir.) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."), cert. denied, 441 U.S. 951, 99 S. Ct. 2179 (1979); Jackson v. Heath, 10 Civ. 3449, 2010 WL 3075557 at *14 (S.D.N.Y. Aug. 6, 2010) (Peck, M.J.) ("The fact that Cochrane was the only witness . . . and that there were inconsistencies in her testimony" did not make the evidence

_____

[19]/        (...continued)
testimony, is fully supported by the record."); Taxiarhopoulos v. Spence, No. CV 92-0790, 1992 WL 403112 at *4 (E.D.N.Y. Dec. 28, 1992) (The petitioner "cannot show that the evidence was insufficient to support conviction.  For example, he challenges the credibility of the main prosecution witness . . ., pointing to alleged inconsistencies in his testimony. This, however, was an argument made to, and properly resolved by, the trial jury."); Fagon v. Bara, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony").

insufficient."); <u>Cox</u> v. <u>Herbert</u>, 420 F. Supp. 2d 144, 162 (W.D.N.Y. 2006) (Complainant's "testimony alone would have been sufficient, even without the corroborating witnesses" to establish that defendant had shot her.); <u>Olivo</u> v. <u>Thorton</u>, 05 Civ. 3237, 2005 WL 3292542 at *16 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (testimony of single witness sufficient), <u>report & rec. adopted</u>, 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006); <u>Means</u> v. <u>Barkley</u>, 98 Civ. 7603, 2000 WL 5020 at *4 (S.D.N.Y. Jan. 4, 2000) ("The testimony of a single uncorroborated witness is sufficient to achieve a showing of guilt beyond a reasonable doubt, even if that witness's testimony is less than entirely consistent." (citations omitted)).

A rational jury could have concluded, based on Lang's testimony, that Taylor intended to and did cause physical injury to Fesce.  (<u>See</u> pages 2-3 above.)  Here, as in prior cases, "the jury's decision was largely a matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses . . . .  We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence."  <u>Gruttola</u> v. <u>Hammock</u>, 639 F.2d at 928.

Accordingly, Taylor's sufficiency of the evidence habeas claim should be <u>DENIED</u>.

## **CONCLUSION**

For the reasons set forth above, Taylor's habeas petition should be <u>DENIED</u> in its entirety, and a certificate of appealability should not be issued.

## **FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections. See also Fed. R. Civ. P. 6.[20] Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Shira A. Scheindlin, 500 Pearl Street, Room 1620, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Scheindlin (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:      New York, New York
            March 8, 2011

                                          Respectfully submitted,

                                          _____
                                          **Andrew J. Peck**
                                          United States Magistrate Judge

Copies to:   Kenny Taylor
             Noah Chamoy, Esq.
             Judge Shira A. Scheindlin

---

[20]    If the pro se petitioner requires copies of any of the cases reported only in Westlaw, petitioner should request copies from opposing counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.1(c).

H:\OPIN\TAYLOR-Kenny